**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MV INNOVATIONS INC., | |
| Plaintiff, | Case No. 26-cv-01706 |
| v. | DEMAND FOR JURY TRIAL |
| SCHEDULE A DEFENDANTS, | |
| Defendants. | |

**COMPLAINT**

Plaintiff MV Innovations Inc. ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint design patent infringement under the Patent Act and for trademark infringement and counterfeiting under the Lanham Act against the defendant stores identified on Schedule A attached hereto (collectively, "Defendants"). Defendants are knowingly and intentionally manufacturing, importing, displaying, promoting, advertising, distributing, offering for sale, and selling infringing versions of Plaintiff's design patent and trademark (the "Infringing Products"). In support hereof, Plaintiff, states as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, et seq., the Lanham Act, 15 U.S.C. § 1051, et. seq., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.     Personal jurisdiction over each Defendant satisfies constitutional due process because each Defendant has purposefully directed and expressly aimed its tortious activities at the Commonwealth of Pennsylvania and established sufficient minimum contacts with Pennsylvania by, among other things, being willing to accept an order for a product bearing Plaintiff's trademark and infringing the ornamental design claimed in Plaintiff's patent from a representative of Plaintiff

1

with a Pennsylvania address, being willing to ship the products to that representative in Pennsylvania, and being willing to collect Pennsylvania sales tax. In addition, upon information and belief, each Defendant has sold additional products that directly infringe Plaintiff's trademark and design patent to consumers within Pennsylvania not affiliated in any way with Plaintiff through the regular course of business, with the knowledge that Plaintiff is harmed in Pennsylvania as a result of its sales of infringing products to Pennsylvania residents. Plaintiff's claims arise out of and relate to Defendants' sales of infringing products to Pennsylvania residents through the regular course of business.

3.      Personal jurisdiction over each Defendant also satisfies constitutional due process because the causes of action asserted herein, including trademark infringement and counterfeiting and design patent infringement, are intentional torts, were aimed at Pennsylvania, and caused harm that each Defendant should have anticipated would be suffered by Plaintiff in Pennsylvania.

4.      Upon information and belief, Defendants have cooperated, communicated, shared information, and coordinated their efforts in order to create an infringing marketplace operating in parallel to the legitimate marketplace of Plaintiff and third parties authorized to sell products embodying Plaintiff's trademark and design, including: employing and benefitting from substantially similar paid advertising, marketing, and advertising strategies (e.g., search engine optimization or "SEO"), in order to make their online storefronts appear more relevant and target a consumer searching for products embodying Plaintiff's trademark and design. By their actions, in addition to the damages associated with unauthorized use of Plaintiff's trademark and design, Defendants are causing concurrent and irreparable harm to Plaintiff and the consuming public by: (1) reducing the online visibility of Plaintiff's trademark and design; (2) diluting and eroding the retail market price for Plaintiff's trademark and design; (3) causing overall degradation of the value

of goodwill associated with Plaintiff's trademark and design; (4) devaluing the exclusivity that enhances the worth of Plaintiff's art and reputation; and (5) increasing Plaintiff's overall cost to market its goods and educate consumers about Plaintiff's trademark and design.

5.      Upon information and belief, Defendants are aware of Plaintiff and Plaintiff's trademark and design patent and are aware that their infringement is likely to cause harm to Plaintiff in Pennsylvania.

6.      Plaintiff is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendants' unauthorized sale of the Infringing Products in direct competition with Plaintiff.

7.      Personal jurisdiction over each Defendant satisfies the Pennsylvania long-arm statute, and therefore Rule 4(k)(1)(A) of the Federal Rules of Civil procedure. 42 Pa. Cons. Stat. § 5322 (a) provides in pertinent part:

> "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

Defendants are subject to jurisdiction under the Pennsylvania long-arm statute because, upon information and belief, Defendants have committed the intentional tort of trademark infringement and design patent infringement in Pennsylvania by using Plaintiff's trademark and making, using, importing, offering for sale, and/or selling unauthorized imitations of products embodying

3

Plaintiff's design in Pennsylvania, accepting orders from Pennsylvania residents, shipping infringing products into Pennsylvania, and collecting Pennsylvania use tax on such orders.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391: Defendants do not reside in the United States and are subject to venue in any district. Further, Defendants solicit business from this Judicial District and, upon information and belief, conduct and transact significant business in this Judicial District.

## II. INTRODUCTION

9. Plaintiff files this action to combat online infringers and counterfeiters who trade upon Plaintiff's reputation and goodwill by (1) making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of unauthorized and unlicensed products that infringe Plaintiff's design patent (the "HANG HERO Design") and/or (2) selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's federally registered trademark (the "HANG HERO Trademark"). *See* **Exhibit 1**. Like many other intellectual property right owners, Plaintiff suffers ongoing daily and sustained violation of its intellectual property rights at the hands of infringers, such as Defendants herein. Defendants have created Internet Stores by the dozens, making, using, importing, and distributing products that bear copies or colorable imitations of the HANG HERO Trademark and infringe the ornamental design claimed in the HANG HERO Design to sell copycat versions of Plaintiff's Products to unknowing customers. Plaintiff is and continues to be harmed, the consuming public is misled and confused, and Defendants earn substantial profits from their infringing activities.

10. Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship

between Defendants and suggesting that Defendant Internet Stores share common manufacturing sources and that Defendants' infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their infringing operation, including changing the names of their Stores frequently, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' willful infringement of Plaintiff's federally registered trademark and design patent as well as to protect unknowing consumers from purchasing knockoff products over the Internet. Because of Defendants' actions, Plaintiff has been and continues to be irreparably damaged both through consumer confusion, dilution, and tarnishment of its valuable trademark and through its loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented design. Accordingly, Plaintiff seeks injunctive and monetary relief.

### III.    THE PARTIES

### Plaintiff MV Innovations Inc.

11.    Plaintiff is a private California corporation and is the creator and seller of high-quality tools designed to help homeowners measure, level, and nail art or photo frames (the "HANG HERO" Products). Plaintiff markets these products through its HANG HERO brand, which allows consumers to purchase the product online through the company's website[1] and authorized retail channels.[2] The HANG HERO Products have become enormously popular and even iconic, driven by Plaintiff's exacting quality standards and innovative designs. Among the purchasing public, genuine HANG HERO Products are instantly recognizable as such. Products

---

[1] www.myhanghero.com
[2] Including Home Depot, Walmart, CVS, Walgreens, Ace Hardware

bearing the HANG HERO Trademark and Design have come to symbolize high quality, and the HANG HERO Products are among the most recognizable home improvement devices in the United States.

12.     Among Plaintiff's most important assets is the intellectual property associated with its HANG HERO brand. Specifically, Plaintiff is the assignee and owner of a U.S. trademark registration used to identify innovative products that it markets, sells, and licenses. Furthermore, Plaintiff is the owner a U.S. design patent for its devices. Defendants' sales of the infringing products in violation of Plaintiff's trademark and patent rights are irreparably damaging Plaintiff.

13.     Plaintiff distributes and retails the high-quality HANG HERO Products within Pennsylvania under the federally registered trademark HANG HERO (U.S. Reg. 7,320,978) (the "HANG HERO Trademark"). Plaintiff's HANG HERO Trademark has been used in the United States in connection with the advertisement, design, distribution, and offer for sale of its HANG HERO Products. The HANG HERO Trademark has become synonymous with the company's exacting quality standards. The unique designs of the HANG HERO Products have achieved substantial popularity and recognition. Plaintiff's unique products have been advertised with its federally registered trademark. Plaintiff continues to heavily advertise its unique products on all its e-commerce marketplaces, social media, and advertisements. There are many original reviews and testimonials online praising the HANG HERO Products.

14.     Plaintiff sells its genuine HANG HERO Products through the Company's website and authorized retail channels. The HANG HERO Products have become enormously popular and even iconic, driven by Plaintiff's exacting quality standards. Among the purchasing public, genuine HANG HERO Products are instantly recognizable as such. In the United States and around

6

the world, the HANG HERO brand has come to symbolize high quality, and HANG HERO Products are among the most recognizable in the United States.

15.     The HANG HERO Trademark is distinctive and identify the merchandise as goods originating from the Plaintiff. The registration for the HANG HERO Trademark constitutes prima facie evidence of its validity and of Plaintiff's exclusive right to use the HANG HERO Trademark pursuant to 15 U.S.C. § 1057(b). The HANG HERO Trademark has been continuously used and never abandoned since its first use.

16.     HANG HERO Products are also known for its distinctive patented design. Accessories fashioned after the designs are associated with the quality and innovation that the public has come to expect from HANG HERO Products. Plaintiff is the lawful assignee of all rights, title, and interests in and to U.S. Patent No. D949,718 (the "'718 Patent" or "HANG HERO Design") that covers the ornamental features of its HANG HERO Products. The registration details of the '718 Patent are shown in the chart below:

| Registration Number | Patent Claim | Issue Date |
| --- | --- | --- |
| US D949,718 | The ornamental design for a wall punch, as shown and described. | Apr. 26, 2022 |

17.     The above U.S. registrations for the HANG HERO Trademark and Design are valid, subsisting, in full force and are currently in use in connection with HANG HERO Products. True and correct copies of the U.S. Registration Certificates for the above-listed trademark and design patent are attached hereto as **Exhibit 1**.

18.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting the HANG HERO Products. As a result, products bearing the HANG HERO Trademark and incorporating the ornamental features claimed in the HANG HERO Design are widely recognized and exclusively associated by consumers, the

7

public, and the trade as being high-quality home improvement devices sourced from Plaintiff. The HANG HERO Products have become among the most popular of their kind in the U.S. and the world. The widespread fame, outstanding reputation, and significant goodwill associated with the HANG HERO brand have made the HANG HERO Trademark and Design invaluable assets of Plaintiff.

### Defendants

19. Defendants are individuals and business entities who, upon information and belief, primarily reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Pennsylvania and in this Judicial District, through the operation of fully interactive commercial websites or Defendant Internet Stores in various online marketplaces. Each Defendant targets the United States, including Pennsylvania, and has offered to sell and, on information and belief, has sold and continues to sell knockoff products to consumers within the United States, including Pennsylvania and this Judicial District.

20. Defendants are an interrelated group of infringers who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine HANG HERO Products, while they actually sell inferior imitations of Plaintiff's HANG HERO Products. Defendant Internet Stores share unique identifiers, such as common design elements, the same or similar knockoff products that they offer for sale, similar product descriptions, the same or substantially similar shopping cart platforms, accepted payment methods, and check-out methods, lack of contact information, and identically or similarly priced products and volume sale discounts. As such, Defendant Internet Stores establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence. The tactics used by

8

Defendants to conceal their identities and the full scope of their infringing operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV.    DEFENDANTS' UNLAWFUL CONDUCT

21.    Upon information and belief, at all relevant times hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the HANG HERO Trademark and Design, including its exclusive right to use and license such intellectual property and the associated goodwill.

22.    Defendants have purposefully directed some portion of their infringing activities towards consumers in this District through importing, distributing, advertising, offering for sale, or selling products using or bearing Plaintiff's trademark and/or design.

23.    Defendants directly engaged in unfair competition with Plaintiff by distributing, advertising, offering for sale, or selling goods bearing Plaintiff's trademark and design to consumers within the United States and this District through their Internet Stores.

24.    Infringers, such as Defendants here, are typically in communication with each other. They regularly participate in QQ.com chat rooms and communicate through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25.    Defendants take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat infringement. For example, infringers take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing Defendants to "routinely use false or inaccurate names

and addresses when registering with these Internet platforms." *See* **Exhibit 2**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Pennsylvania residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including Pennsylvania, accept payment in U.S. dollars, and, on information and belief, have sold knockoff products to residents of Pennsylvania.

26.　Upon information and belief, at all relevant times hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the HANG HERO Trademark and Design, including its exclusive right to use and license such intellectual property and their associated goodwill.

27.　Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Furthermore, Defendant domain names often use privacy services that conceal the owners' identities and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms by using the identities listed in Schedule A of this Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

28.    The unauthorized products advertised and for sale in Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the knockoff products are manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

29.    Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the HANG HERO Trademark and Design in connection with the unauthorized products, through, *inter alia*, the internet. The unauthorized products are not HANG HERO branded products of the Plaintiff. Plaintiff did not manufacture, inspect, or package the knockoff products and did not approve them for sale or distribution. Each of Defendant Internet Stores offers shipping to the United States, including Pennsylvania, and, on information and belief, each Defendant has sold knockoff products into the United States, including Pennsylvania.

30.    Defendants' use of the HANG HERO Trademark and Design in connection with the importation, advertising, distribution, offer for sale, and sale of infringing products, including the sale of infringing products into Pennsylvania, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

31.    Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling infringing products that infringe upon the HANG HERO Trademark Design unless preliminarily and permanently enjoined. As such, Plaintiff also seeks to disable domain names owned by Defendants that are the means by which Defendants could continue to infringe Plaintiff's intellectual property.

## COUNT I

## INFRINGEMENT OF UNITED STATES DESIGN PATENT (35 U.S.C. § 271)

11

32.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 31.

33.    Plaintiff is the lawful assignee of all right, title, and interest in the HANG HERO Design. *See* **Exhibit 1**.

34.    Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of infringing products that infringe the ornamental designs claimed in the Plaintiff's design patent either directly or under the doctrine of equivalents.

35.    Defendants have been and are infringing Plaintiff's design patent by making, using, selling, or offering sale in the United States, or importing into the United States, including within this judicial district, the accused products in violation of 35 U.S.C. § 271(a).

36.    Defendants have infringed Plaintiff's design patent through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented design. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

37.    Defendants have infringed Plaintiff's design patent because, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the ornamental design of Plaintiff's design patent and the overall design features of Defendants' products are substantially the same, if not identical, with resemble such as to deceive an ordinary observer, including to deceive such observer to purchase an infringing product supposing it to be Plaintiff's product protected by Plaintiff's design patent.

38. Plaintiff is entitled to recover damages adequate to compensate for the infringement, including Defendants' profits pursuant to 35 U.S.C. § 289. Plaintiff is entitled to recover any other damages that are appropriate pursuant to 35 U.S.C. § 284.

**COUNT II**

**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

39. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 38.

40. This case also concerns a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of federally registered HANG HERO Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The HANG HERO Trademark is distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under the HANG HERO Trademark.

41. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing the HANG HERO Trademark without Plaintiff's permission.

42. Plaintiff is the exclusive owner of HANG HERO Trademark. Plaintiff's U.S. registration for HANG HERO Trademark is in full force and effect. *See* **Exhibit 1**. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the HANG HERO Trademark and are willfully infringing and intentionally using the HANG HERO Trademark in connection with counterfeit items. Defendants' willful, intentional, and unauthorized use of the HANG HERO Trademark is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

13

43.    Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44.    Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademark.

45.    The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's HANG HERO Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

    i.    Using Plaintiff's trademark in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with Plaintiff's trademark;

    ii.    Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's trademark and associated with or derived from Plaintiff's trademark;

14

iii. Making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe Plaintiff's trademark;

iv. Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs texts in connection with the offer or sale of counterfeit products;

v. Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs texts in connection with the offer or sale of counterfeit products;

vi. Further infringing Plaintiff's trademark and damaging Plaintiff's goodwill;

vii. Otherwise competing unfairly with Plaintiff in any manner;

viii. Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's trademark, or any reproduction, counterfeit copy, or colorable imitations thereof;

ix. Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit products;

15

x.   Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's trademark or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's trademark; and,

xi.   Registering any additional domain names that use or incorporate any portion of the Plaintiff's trademark; and,

B.  That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i.   Displaying images protected by the Plaintiff's trademark in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the Plaintiff's trademark; and

ii.   Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's trademark, trade dress, or any reproduction, counterfeit copy, or colorable imitation thereof; and,

C.  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written

report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

D. Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: eBay; payment processors such as PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, YouTube, LinkedIn, X; Internet search engines such as Google, Bing, and Yahoo; webhosts for Defendants Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using the Plaintiff's trademark ; shall:

   i. Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit HANG HERO Products using Plaintiff's trademark, including any accounts associated with the Defendants listed on Schedule A;

   ii. Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing products using Plaintiff's trademark; and,

   iii. Take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online Stores from any search index; and,

E. That each Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

17

infringement of Plaintiff's trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F.  For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's trademark in its federally registered trademark pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G.  For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H.  In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's trademark;

I.  That Defendants, their affilitiates, officers, agents, employees, attorneys, and all persons acting for, with by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    i.    making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of any products not authorized by Plaintiff and that include any reproduction, copy, or colorable imitation of the designs claimed in the HANG HERO Design;

    ii.    aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the HANG HERO Design; and

    iii.    effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b); and

J. Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Alibaba, Aliexpress, Amazon, Shein, Shopify, Temu, TikTok, and Walmart; payment processors such as: PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, and X; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and domain name registrars shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe the ornamental designs claimed in the HANG HERO Design;

K. That Plaintiff be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiff for Defendants' infringement of Plaintiff's design patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

L. That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of HANG HERO Design be increased by three times the amount thereof, as provided by 35 U.S.C § 284;

M. In the alternative, that Plaintiff be awarded complete accounting of all revenue and profits realized by Defendants from Defendants' infringement of HANG HERO Design, pursuant to 35 U.S.C § 289;

N. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

O. That Plaintiff be awarded any and all other relief that this Court deems equitable and just. Plaintiff demands trial by jury as to all causes of action so triable.

19

Dated: August 13, 2026

Respectfully submitted,

/s/ James E. Judge

Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Ying Chen (IL Bar No. 6346961)
Flener IP Law, LLC
77 West Washington Street, Suite 800
Chicago, Illinois 60602
(312) 724-8874
jjudge@fleneriplaw.com